Samuel M. Gold, J.
Plaintiff, Local No. 1 of the Amalgamated Lithographers of America, moves for summary judgment in a declaratory judgment action against the Amalgamated Lithographers of America (hereinafter referred to as ALA) and other defendants.
The original complaint sought judgment declaring (1) that plaintiff has the right to sever its connection with ALA so as not to become part of a new organization which would result from a prospective merger of ALA with the International Photo Engravers Union of North America (hereinafter referred to as IPEU); (2) that various pension and other funds and properties <£ belong to and are the sole property of Local 1”; and (3) that ALA has no right, title or interest in and to said funds and properties.
A motion to dismiss the complaint on the ground that no justiciable controversy existed, because the merger had not been consummated and might never come about, was denied by Mr. Justice Lobeto, who stated that the proceedings theretofore taken ‘ ‘ portend its probability ’ ’.
Thereafter a motion was made for summary judgment in plaintiff’s favor. In view of the fact that the judgment sought *111 included a declaration that various trust funds belong to and are the sole property of plaintiff, Mr. Justice Fine held that the trustees of the funds were necessary defendants, pointing out that no effective declaration of the rights to the funds could be made without the trustees’ presence as parties to the action. Accordingly, said Justice directed the bringing in of the trustees and denied the motion for summary judgment, but without prejudice to a renewal after the trustees had been brought in as defendants and served their answers. The trustees were subsequently made defendants and they served their answers. The present motion was then made.
In the meantime, in September, 1964, the merger became effective. Plaintiff refused to become part of the merged organization, known as the “ Lithographers and Photoengravers International Union ’ ’, and, in effect, seceded from ALA. A justiciable controversy still exists as to the rights of the parties in connection with the various funds and properties heretofore mentioned, and this issue requires a determination of plaintiff’s right to secede.
The moving affidavit on the present motion does not seek a declaration that the funds and properties belong to plaintiff. The original request for such a declaration has been dropped. The relief now requested is limited to a declaration that plaintiff had the right to secede and that ALA has no right, title or interest in said funds and properties. Plaintiff emphasizes that “ plaintiff is not seeking to change the ownership of any trust fund, to change the terms of any trust instrument, or to change the rights of anyone who has a beneficial interest in any trust fund ”.
Upon the oral argument of this motion, the relief sought was further modified by omitting from the funds as to which a declaration was sought at this time (1) the mortuary fund and (2) the emergency fund. The present motion was described by plaintiff’s counsel as being one “for partial summary judgment ” (emphasis supplied).
The affidavit of plaintiff’s president, Swayduck, sworn to July 22, 1964, states that plaintiff is a labor union whose ‘ ‘ membership consists of workers in the lithographic industry employed in Local l’s territorial jurisdiction”. Swayduck states that ALA is a federation of local unions (including Local 1) which represents lithographic workers; that “it has always been the fundamental policy of both Local 1 and the ALA to limit their organizational activities and their membership to workers engaged in the lithographic industry ’ ’. Sway-duck asserts that 1 ‘ the maintenance ' of this policy has been *112 one of the major reasons for the success and strength of Local 1 and the ALA”. He claims that labor unions in competitive portions of the graphic arts field, such as the unions in the letterpress printing unit, have sought to challenge the right of lithographic workers to have their own union and that attempts by such competitive unions to incorporate the lithographic workers within their own unions have been almost entirely unsuccessful — the National Labor Relations Board having rendered hundreds of decisions ‘ ‘ upholding the right of lithographic workers to a bargaining unit of their own, separate and apart from all other workers in the printing industry ’ ’. Swayduck declares that the security of Local l’s members depends upon its continued existence as a union for lithographic workers only, because “ the economic structure of the printing industry is such that lithographic workers are normally outnumbered by non-lithographic workers in printing plants and shops ”. It is stated that if the N. L. R. B. refused to recognize the right of lithographers to their own bargaining unit in each plant, “ Local 1 could not hope to win representation elections against other printing unions seeking to represent lithographic workers ”. Swayduck declares that for this reason, among others, Local 1 and the ALA have always adhered to their 1 ‘ fundamental policy ’ ’ of organizing lithographic workers only, and that ‘ ‘ at all times, Local 1 and the ALA have been, except in rare instances not pertinent here, unions limited to lithographic workers ”.
According to plaintiff, the merger of ALA with IPEU is contrary to the aforesaid “ fundamental policy ”. Local 1 had consistently opposed the merger by the overwhelming vote of its members, and it has supported the action of its officers in refusing to recognize the merger as binding upon it and, in effect, seceding from ALA. Swayduck states that not a single member has left Local 1 to become part of the merged organization.
ALA takes the position that under the express provision of its constitution, which is binding on plaintiff, the latter is prohibited from severing its connection with ALA. The provisions relied upon read as follows:
“ Sec. 4 (Art. XXIX). In the event of dissolution of a Local by its members severing their membership in such numbers that the Local ceases to exist as a Local, all funds in the Local treasury are to be held in trust by the International Association until such time as the affected Local can again be put on a proper basis to function as a Local ”.
*113 “ Sec. 6 (Art. XXIX). When the number of members of a Local falls below ten, the International Council shall dissolve the Local and transfer the members thereof to membership in the Local nearest to them. If the number of members in a city where a Local formerly existed increases to ten, they may, at their option, again form a Local of their own ”.
In addition, ALA cites the provision of the “ Constitution and General Laws ” (art. XII, § B) that the president “ in case the Local should lapse * * shall turn all its property over to the International Office ’ ’.
These provisions are wholly inapplicable to the instant case. They apply, by their terms, only where members of a local sever their relationship to the local in such numbers that less than 10 members are left. That is not the situation here. Members of Local 1 have not severed their membership at all, and it has many thousands of members.
The above-quoted provisions thus have no- application to the right of Local 1 to secede, en masse, from ALA. Nor do any other provisions of the constitution relate in any way to the right of a local to secede. In other words, the constitution is wholly silent on the subject.
The question of whether plaintiff had the right to secede must, in the circumstances, be determined under general legal principles without regard to the constitution of ALA.
Plaintiff contends that plaintiff, or its predecessor, became part of' the ALA in 1915, when the latter came into existence, and that it had the right to rely upon the fundamental policy of ALA, expressly embodied in its constitution, to limit its membership and that of its locals to lithographic workers and to confine its activities to furthering the interests of lithographic workers only. Breach of this fundamental policy, plaintiff claims, entitles it to rescind its affiliation with ALA on the theory of frustration of purpose.
The provisions of the ALA constitution clearly support plaintiff’s claim. Section 1 of article I provides that the name of the parent association shall be “Amalgamated Lithographers of America ” (emphasis supplied). Section 2 of article I reads as follows: ‘ ‘ The objects of this Association are to protect the individual and collective trade interests of its members; to regulate and advance the interests of Lithography, to impart and confine to its members, or to such who signify their intentions to become members, the most advanced and improved methods in all its branches, whereby the members in general may become the most proficient workmen, to be a bureau for the practical distribution of jobs and help to its members, *114 to establish a Mortuary Fund under terms and conditions as hereinafter provided for; to establish and maintain a registered ‘ Union Label ’ to distinguish the product of the labor of its members, same to be issued to lithographic employers under terms and conditions as hereinafter provided for; to conduct the systematic education of its members through the publication of a monthly “ Lithographers’ Journal ”; to establish and regulate a fair and just system of apprenticeship, to the end that a high standard of workmanship be maintained, and so that the earnings of labor be not unduly injured nor the vocation of lithography demoralized by evil internal competition, to endeavor by all fair and just means to induce nonmembers to join its ranks, and to try at all times to limit the employment of workmen in the various branches of lithography under this Organization’s jurisdicition to those exclusively who are members in good standing.” (Emphasis added.) Section 1 of article II declares that ‘ ‘ This organization shall have full and final jurisdiction, and is the highest tribunal for working people in the lithographic industry” (emphasis supplied). Section 2 of the same article provides that ALA’s jurisdiction shall include “ all classifications of labor and equipment to produce on or from any material adaptable for any lithographic process and such kindred manipulation or equipment as are properly linked with lithography ” (emphasis supplied). Section 3 of said article provides that ALA’s jurisdiction shall include all classifications of labor “which are engaged in the production of lithography or in any part of the lithographic process” (emphasis supplied). Section 4 defines “ lithography ” as “ the general description for all processes based upon the lithographic principle” (emphasis supplied). Section 1 of article II of the ‘ ‘ Constitution and General Laws ’ ’ of AT/A limits membership in a local to persons “ employed in Departments specified in Article XL of The International Constitution ” which lists the various categories of lithographic workers and concludes with a final category of “ all other workers in the Lithographic Department who directly or indirectly contribute to the production of the Lithographic prod-duct ” (emphasis supplied). In addition, article XXVIII of the international constitution provides that a local is organized “by the coming together of not less than ten (10) competent lithographic workers” (emphasis supplied). These various provisions of ALA’s constitution make it clear beyond the possibility of successful dispute that its purpose and activities are limited to the lithographic field and that the membership of its locals is limited to lithographic workers. (Although the *115 constitution is not presently in its original form, having been revised from time to time since its adoption in 1915, no claim is made by ALA that the provisions above referred to, on which plaintiff relies, were materially different in 1915 when plaintiff or its predecessor became a member of ALA.) The by-laws of Local 1 significantly provide that to be eligible for membership in the local a candidate must have complied with the ALA constitution (art. VIII, § 8.1) and for the withdrawal of a member “if he has ceased to be engaged m the lithographic industry ” (emphasis supplied) (art. IX, § 9.7c).
Plaintiff, whose membership consists of lithographic workers, is entitled, upon the merger of ALA with a labor organization representing photoengravers, to rescind and cancel its membership in, and connection with, ALA, because of the latter’s departure from its original purpose and fundamental policy of representing and working for the interests of lithographers alone. The merger represents a complete turnabout by ALA and frustrates the purpose of plaintiff’s membership in ALA, viz., to be represented by a parent union devoted solely to the interests of lithographers.
It is immaterial whether, as ALA contends, the best interests of lithographers will be promoted by the merger, or whether the fears expressed by plaintiff as to the possible adverse effect of the merger on its pension and other funds (by reason of tax and other considerations) are or are not justified. It is likewise of no consequence whether or not the apprehensions voiced by plaintiff about the effect of the merger on future decisions of the N. L. R. B. are warranted. This is so because it is for the membership of Local 1 to decide for itself whether it wishes a membership predicated upon ALA’s representation of lithographers exclusively to continue after ALA has merged with an organization which represents a competing field of the printing industry and which will now represent both lithographers and photoengravers. It suffices that the members of Local 1 believe that their best interests would be served by not going along with the merger. It would be most inequitable to hold that once Local 1 became a member of ALA, it could not undo the connection, regardless of how radically ALA might thereafter change its character and purposes, as expressed in its constitution. The court holds that the merger effected so radical and substantial a change as to entitle plaintiff to rescind its membership in ALA under the doctrine of frustration of purpose. That doctrine is referred to in Bradley v. O’Hare (11 AD 2d 15) in an illuminating opinion by Mr. Justice Beeitel. Although, in the cited case, the court said (p. 24) *116 that the frustration doctrine ‘ ‘ will not suffice ’ ’ to support the seceding local’s claim to the assets theretofore held by it, that was only because of the express provisions of ILA’s constitution limiting the local’s right to secede and providing for ownership of the assets by ILA. The court pointed out (p. 24) that “ [i]t would hardly follow that because ILA was guilty of breach of an implied condition or frustration in the contractual relation- * * '* its ‘ beneficial ownership ’ in the assets [provided for in the constitution] held by the Local would be forfeited and vest in the. Local In the case at bar, however, ALA’s continued representation of lithographic workers exclusively was an implied condition of plaintiff’s membership in ALA, and there is no constitutional provision for ownership in ALA of the assets held by plaintiff which would render the frustration doctrine inadequate.to sustain plaintiff’s claim that ALA has no right to the funds and other property held by it or by trustees for the exclusive benefit of plaintiff’s members — a. subject which will be discussed presently. ALA urges that the frustration doctrine is applicable only in cases, of expulsion of the international body from the federation for corruption or subversion. Although the frustration cases heretofore decided may have all involved expulsion of the international body from the federation, there appears to be no good reason for limiting the doctrine to that class of cases.
ALA contends that there are triable issues of fact which preclude the granting of summary judgment. Issues are raised in respect of plaintiff’s additional claim that it was autonomous. These.issues, even if they would otherwise require a trial for determination, are immaterial if, as pointed out, plaintiff had a right to secede because of frustration of the purpose of its membership in-ALA. ALA questions plaintiff’s claim that it represents lithographers only (Brown’s affidavit of Aug. 8, 1964, p. 28). Brown claims that it represents photoengravers also. No facts to support this claim are set forth. It appears to be based on the fact that plaintiff has reported a membership of. about 1,700 in the classification of “ general worker ”. The classification of “general worker” does not indicate or imply that it refers to nonlithographers, especially since article XL of the ALA constitution defines ‘1 Lithographic Production Craftsmen and General Workers” as.“All other .workers in the Lithographic Department who directly or indirectly contribute to the Lithographic product ’ ’. ' Thus the • category of “ General Worker ”, under the ALA constitution, does not include nonlithographic workmen. ALA asks for an exami *117 nation before trial of plaintiff in order to ascertain whether or not any of its members are not engaged in the lithographic field. Without any factual basis for believing that plaintiff’s membership is not limited to lithographers, as it claims, ALA is not entitled to indulge in a fishing expedition to see if it can find support for its speculative claim. Furthermore, even if it be assumed that a limited number of plaintiff’s members are not lithographers, in contravention of the ALA constitution and plaintiff’s by-laws, the right of plaintiff, whose membership, it is undenied, is predominantly (even if not entirely) in the lithographic field, to secede from ALA would not be affected.
Brown’s affidavit of August 8, 1964 also stresses the fact that the subject of merger between ALA and unions of non-lithographic workers had been “ considered ” at various times in the past. In almost all the instances referred to the merger had been proposed by a union other than ALA. Brown states that in 1932 ALA, proposed ‘ ‘ local cooperation” among certain of the graphic arts unions, and in 1933 “ amalgamation ” with three of them. Brown adds that in 1958 ALA and another union entered into a memorandum of understanding ‘1 while the unions tried to reach a mutual resolution of their problems ”. These various statements of Brown establish, at most, that ALA on some previous occasions suggested or considered mergers or co-operation or mutual understandings with other unions, which never were consummated. They in no way are binding on plaintiff and they cannot deprive plaintiff of its right to disassociate itself from ALA in the event of a merger with non-lithographic unions. It does not even appear that plaintiff • was aware of the proposals.
ALA also relies, in its opposition to the motion, on the fact that Swayduck, plaintiff’s present president, had, at one stage of the proceedings looking toward a merger, voted in favor thereof, and also upon a letter written by Swayduck, dated September 2, 1964, to the president of International Typographical Union, in which Swayduck states that he had discussed with the ITU president the possibility of plaintiff’s becoming affiliated with ITU and that he had expressed the view that such an affiliation would be beneficial. Swayduck’s vote and letter are not binding on plaintiff and expressed, at most, his individual views. Furthermore, as appears from the exhibit of which the letter is part, Swayduck was referring to an “affiliation”, not a merger. On September 17, 1964 the by-laws of plaintiff were amended to prohibit even affiliation. *118 federation, or any other connection with any international except upon the condition, inter alia, that two thirds of the total membership of plaintiff vote approval.
In the court’s opinion, no triable issues of fact are presented as to plaintiff’s right to secede, because the merger frustrated the purpose of plaintiff’s becoming a member local of ALA.
There remains for consideration plaintiff’s request for a declaration that ALA has no right, title or interest in (1) the pension fund of Local 1, (2) the general fund, (3) the strike, organizing and relief fund, (4) the sickness & accident fund of Local 1, (5) the lithography school fund, and (6) in the building in which Local 1 has its offices. Plaintiff does not claim title or ownership of the funds held by trustees, but only that ALA has no valid claims or interest in them. The pension fund is held by trustees for the exclusive benefit of plaintiff’s members. The income is derived entirely from contributions by plaintiff’s members. The general fund, held by trustees, is likewise solely for the benefit of plaintiff’s members and is maintained solely out of dues paid to plaintiff by its members. The same situation obtains as to the strike, organizing and relief fund. The only difference in the cases of the sickness & accident fund and the school fund is that the income of those funds is derived from contributions made by the employers of plaintiff’s members, pursuant to a collective bargaining agreement. ATA does not contribute to any of the aforesaid funds, and they are all for the exclusive benefit of plaintiff’s members. In the circumstances, ALA possesses no valid claim to any interest in said funds. As heretofore pointed out, „ the constitutional provisions upon which ALA relies apply only where a local, by reason of members’ withdrawals therefrom, possesses less than 10 members, which is not the case here. The title to the building in which Local 1 has its offices is not held by trustees, as alleged in the complaint, but by certain officers of Local 1. No valid basis for any claim in this property on the part of ALA is shown to exist.
This motion for partial summary judgment is accordingly granted to the extent of declaring (1) that plaintiff had the right to sever its connection with ALA upon the consummation of the merger and (2) that ALA has no valid claims to the funds and property above referred to. The action is severed as to the balance of plaintiff’s claim. Settle order.