LOCAL No. 1, AMALGAMATED LITHOGRAPHERS OF AMERICA, BY EDWARD SWAYDUCK, President, Respondent, *v.* KENNETH J. BROWN, Individually and as President of the Amalgamated Lithographers of America, et al., Appellants, et al., Defendants.

First Department, December 12, 1968.

*Ralph P. Katz* of counsel (*Eugene F. Roth, Ernest Fleischman* and *I. Cyrus Gordon* with him on the brief; *Delson & Gordon,* attorneys), for appellants.

*Simon H. Rifkind* of counsel (*H. Russell Winokur* and *Allan Blumstein* with him on the brief; *Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison,* attorneys), for respondent.

STEVENS, J. This is an action for a declaratory judgment and related relief brought by Local No. 1, formerly affiliated with the defendant, the Amalgamated Lithographers of America.

Plaintiff sought a proportionate share of two funds, the ALA mortuary fund and the ALA emergency fund, maintained formerly by defendant the Amalgamated Lithographers of America (hereinafter referred to as ALA). Special Term granted plaintiff's motion for summary judgment and adjudged that plaintiff, as trustee for its members, is entitled to a proportionate share of the two funds. Special Term appointed a Referee to hear, determine and report the dollar amount of the proportionate share of the interest of plaintiff's members in the two funds. Defendants appeal from the order and interlocutory judgment granting the plaintiff's motion for summary judgment. In an earlier decision (26 A D 2d 90, affd. without opn. 20 N Y 2d 962) this court affirmed a determination of Special Term (45 Misc 2d 109) that plaintiff Local No. 1 had a right to secede from the defendant ALA when ALA merged with the Photoengravers Union. We also declared that equity and justice dictated that the funds created with dues of the members of Local No. 1 and property acquired by Local No. 1 with funds paid by members belonging to Local No. 1 should be the property of Local No. 1. The funds involved in the earlier appeal were the general fund of Local No. 1, the strike, organizing and relief fund, and the property of Amalithone Realty Corporation. The Amalithone Realty Corporation held title to a building at 113 University Place, Borough of Manhattan, which was owned by Local No. 1. The stock of such corporation was held by the trustees elected by Local No. 1 and the building was purchased solely with funds of Local No. 1.

Involved in this appeal, and the question at issue, is whether the plaintiff has the right to a proportionate share of the mortuary fund and the emergency fund. It is the contention of the defendants that the plaintiff, in severing its connection with and leaving the ALA, forfeited its members' benefits in each fund. Plaintiff on the other hand asserts that by reason of the merger of ALA with the Photoengravers and its retention of the funds, some part of which was contributed by Local No. 1 members, that this represents a deprivation of the interest of the members of Local No. 1. In our earlier determination (26 A D 2d 90) with reference to the funds there involved, we looked to the seat of the beneficial interest, and concluded that such funds belonged to the plaintiff.

Turning to the funds now in question, we look to the constitution of the ALA to ascertain how these funds were created, of

what they consist, and whether or not plaintiff properly is entitled to a proportionate share of such funds.

Section 1 of article XXIII of the constitution provides that there shall be established and maintained a separate mortuary fund which cannot be used for any other purpose than the payment of mortuary benefits and costs of the administration of the fund. Under subdivision (a) of section 2 it is mandatory that each member of the association participate in the mortuary fund with certain main exceptions. Subdivision (b) of section 2 specifically provides " a member expelled from the Association for any cause shall not have any claims against the Mortuary Fund." It is further provided that under no circumstances shall withdrawal from participation in the fund be permitted. Payments to the mortuary fund are provided for under the terms of section 4 of article XXIII. Each local is required to pay direct to the ALA a flat inaugural fee of $8 for each member participating in the mortuary fund which is credited to such fund. Additionally, each local has to pay to the ALA for each participating member $1 per month. Power is given to the secretary-treasurer, if the fund falls below a certain amount, to levy upon each local an assessment for its participating members. Under section 5 the benefits are set forth, and under section 6 each participating member has the right to designate his beneficiary. He also has the right under section 7 to change any named beneficiary. Under section 8, upon which defendants place great reliance, which section deals with proof of death, it is provided that in addition to the death certificate there shall be a certificate supplied to ALA which contains the seal of the local and " this document must certify that the member was in good standing for six (6) months previous to his death, providing he has been a member for more than six (6) months." The notice and proof of death is submitted to the international president of ALA for approval, and when approved the check for the death benefits is to be forwarded to the local officer. The check is to be in favor of the legal beneficiary and the check is then to be handed over by the local to the named beneficiary. Under subdivision (d) of section 4 of article XXIII whenever the fund falls below $1,000,000 the secretary-treasurer, at the direction of the international council, is directed or compelled to levy upon each local an assessment for its participating members " sufficient to replenish the Fund up to $1,000,000, and to ensure payment of future mortuary claims, without reducing the fund below $1,000,000." Under section 3, when the application is received the secretary-treasurer issues a mortuary death bene-

fit certificate for the initiated member and the initiation date is the date from which the mortuary benefit begins. Article XXIII and the quoted portions all indicate that the seat of the beneficial interest remains at all times in the individual member. The payments are made for his benefit, the ALA holds those payments, and upon the happening of the event and the filing of the necessary papers payment is made to the beneficiary in accordance with the length of time that the decedent had been a member of the organization.

This fund has a characteristic peculiar to it and can always be identified. The member pays a proportionate share into the fund and the local pays the money to the ALA as agent for the member and as the conduit through which the money passes. It is the intention of all parties that from these payments direct benefits shall be paid to a decedent's beneficiary. There is no other purpose for the fund. It has a fixed, readily ascertained and definite purpose. The scale of payments is provided for in accordance with the duration of membership which, by that very fact, takes into account the payments made by such member. It is concluded that Special Term correctly held that Local No. 1, which now maintains a mortuary fund for its members, is entitled to its members' proportionate share of the ALA mortuary fund, and that the members of the local did not forfeit their interest in such fund upon the severance by Local No. 1 of its connection with the ALA.

Article XXII of the ALA constitution provides for the emergency fund, which can also be termed a strike fund. Under section 1 of article XXII it is provided that the purposes shall be " (a) the payment of weekly benefits in the event of strikes, lockouts, or sacrificed members; (b) the payment of expenses directly relating to strikes or lockouts as determined by the President and approved by the International Council." The revenue for the fund is derived originally by the levying of assessments of $1 per week on each member. Section 1 of article XXVI in part provides " a strike, or the results of a strike, are matters that vitally concern every member of this Association, whatever the occasion of the strike may be. To declare or initiate a strike is therefore not a Local matter, and not within the power of any Local, excepting under circumstances and conditions provided for in the Constitution and General Laws." Strikes are within the jurisdiction of the international council. Section 12 notes that any local inaugurating a strike without the consent of the international will not be extended any financial support, unless it is an emergency strike as described in article

XXVII, and even where there is an emergency strike the members of the local are cautioned before taking any action to consider the state of the treasury, local and international, the number of men affected, the state of the trade and the number of union and nonunion men in the shop involved, and also the number and the jurisdiction of the local. Wherever there is a strike with the consent of the ALA membership benefits are provided for in section 14 of article XXVI, and it is specifically provided in section 25 '' any money appropriated by a Local in aid of a strike or lockout shall not be refunded to such Local, except by a two-thirds (⅔) vote of the International Council.'' Section 19 of article XXVI provides '' when a strike or lockout is declared, the Local Council of the Local involved, in conjunction with the International Officers, shall take full charge of the same.'' It seems clear that payment of moneys into the emergency fund is payment for the general good of all of the members of the ALA, and the ALA is empowered to disburse the funds for the general benefit of any of its members when a strike is called, if that strike be with the consent of the ALA or if it be an emergency strike. In other words the local has no say-so over just how that money shall be spent, and there is neither assurance nor guarantee that the money paid by the members of a particular local will ever be returned to that local or its members if no strike is called in which the local is involved. The general purpose of the money, as noted, is for the general benefit of all members of the international, that is the ALA. Accordingly, the seat of the beneficial interest is in the total membership.

Additionally, when these moneys are paid and expended there is no method or manner of telling which funds were so used. That is, whether the funds from a particular local were used in their entirety, or whether there was a prorata use depending upon the amounts paid in by the local. These matters were controlled and intended to be controlled solely by the ALA. The intention of all parties was that should conditions necessitate it, the moneys paid were to be expended for the payment of strike benefits in order to secure and protect the interests not only of the members of a particular local but of all of the members of the international. Moreover, under section 25 of article XXVI it is specifically provided that money appropriated by a local in aid of a strike shall not be refunded. When these moneys were paid to the local and by the local to the international it was the intention of the parties that they should forfeit all title to such moneys. There was a waiver of any interest in such funds,

except and unless the particular local became involved in a strike or lockout, in which case they were entitled to receive strike benefits as provided in the ALA constitution. The seat of the beneficial interests vested in all members of the ALA. Also, as compared with the total membership of the ALA the plaintiff's membership represented about 20%. No reason appears in equity or in law why the intention of the parties and payment of moneys with respect to the emergency fund should be disregarded, and why there should be carved out of the emergency fund as it presently exists in the ALA, or as it existed at the time of severance, a particular percentage or proportion for the benefit of Local No. 1. Benefits paid by the international, the ALA, are paid in the discretion of the ALA, that is, when it so determined or where the result of the strike is a threat to the interests of the international. Nor is there here, as there is in the mortuary fund, any direct reltaionship between the amount of the assessment which a member might have paid and the amount of the benefits which he would receive in the event of a strike or a lockout. Neither the local nor a member thereof has any vested right or interest in the emergency fund. It is concluded that Special Term erred when it declared that the plaintiff had a right to a proportionate share of the emergency fund. Nor can it be urged that there was unjust enrichment of the ALA or that the ALA received a windfall by being permitted to retain such moneys as are in the international emergency fund. In fact, as urged by the appellants, the members of Local No. 1 would receive benefits from the emergency fund only if the strike were sanctioned by the international or if the strike was in defense of vital interests of the international.

The order and interlocutory judgment appealed from should be modified on the law so as to declare that the ALA is entitled to the emergency fund, and to grant summary judgment with respect thereof to the defendants, incorporating such a declaration. As so modified, the order and judgment appealed from should be otherwise affirmed, without costs to either party.

BOTEIN, P. J., EAGER, STEUER and CAPOZZOLI, JJ., concur.

Order and judgment entered April 10, 1968, modified, on the law, so as to declare that the ALA is entitled to the emergency fund, and to grant summary judgment with respect thereof to the defendants incorporating such a declaration. As so modified, the order and judgment appealed from is otherwise affirmed, without costs or disbursements to either party.

Settle order on notice.